Good morning, Your Honors, and may it please the Court. My name is Sean Helling. I represent the applicant appellants in this case, the Montana Wilderness Association, Greater Yellowstone Coalition, and the Wilderness Society. I should begin by noting that this case follows from the first appeal heard this morning, in which the applicant conservation group sat opposite the government. I was stunned to learn that. This is not a case in which the applicant group sit on the government's side. The appeal here turns on a single question, namely whether a coalition of conservation groups can be adequately represented by their adversary, the Forest Service, in an ongoing dispute regarding wilderness character and motorized vehicle use. The answer to this question lies beyond reasonable dispute in this circuit. Because this Court has repeatedly granted intervention on much lesser showings of inadequate representation, the District Court's order should be reversed, allowing applicants to defend the essential wilderness character protections at issue in this case. Again, this appeal begins where the appeal in McAllister left off. In Montana Wilderness Association v. McAllister, the applicant conservation groups prevailed in their challenge to a travel management plan that failed to maintain the wilderness character of the Highlight Porcupine-Buffalo Horn Wilderness Study Area. The Forest Service, of course, elected to appeal that decision, and in so doing it made clear its commitment to a management plan that deprives the study area of essential resource protections. After filing that appeal, the Forest Service announced an interim management strategy that is aimed at complying with the McAllister Court's order over the short term. Under that plan, additional snowmobiling restrictions have been implemented within the study area, restrictions that ensure the study area's wilderness character is maintained. Citizens for Balanced Use, which is a snowmobiling advocate, dislikes the interim plan and has accordingly filed this lawsuit to challenge it. In its case, CBU seeks a declaration that the interim plan actually violates the Montana Wilderness Study Act by reducing motorized vehicle use below 1977 levels. CBU has also requested an injunction that would actually prohibit the Forest Service from enforcing the protections of the interim plan. And what has the Forest Service done in response? In response to this lawsuit, the Forest Service continues to defend the interim plan as mandated by the district court's order but not the Montana Wilderness Study Act itself. And you would come in and advocate the same position? Our position is actually very different, Your Honor. And that's the fundamental issue. Go ahead. Why don't you explain how your position differs from the government's? In two respects, Your Honor. CBU in this case has argued that a presumption of adequate representation should be applied because the applicant groups and the Forest Service share the same ultimate objective. That's incorrect, as the Forest Service actually seeks to revive a less protective travel management plan for the study area on appeal. So first, rather than seeking to ensure the study area has the benefit of additional wilderness character protections, as the applicant groups seek to do, the Forest Service seeks to revive something that actually provides fewer protections for the study area. So in terms of outcome, the ultimate objectives of the applicants and the Forest Service are very different. This divergence of position actually stems from a difference in interpretation when it comes to the Montana Wilderness Study Act. According to the Forest Service, the prior plan, which was discussed this morning, did good enough. Nothing more was needed in the way of vehicle use restrictions within the study area. Their position is accordingly that the interim plan's additional protections are required by nothing other than the district court's order. The applicant conservation groups have long argued instead that the protections of the interim plan are required by the Montana Wilderness Study Act itself. This is a difference in legal position that distinguishes the applicant group's objective from that of the Forest Service. This case is accordingly unlike this court's opinion in Northwest Forest Resource Council v. Glickman, in which the court found that the applicants and the government party shared the same interest because they sought to advance the same limited construction of the relevant lawsuit. Accordingly, CBU is wrong in arguing for a presumption of adequate governmental representation in this case, and we're entitled, the applicant groups are entitled to intervene on that basis alone. So you're, just so I understand, you're saying that you rely, your defense of the interim plan relies on, it's proper under the Study Act. That's correct. And the only reason that the, and the only basis of the Forest Service defense of it is that they're under order of the district court. That's right, that they were compelled to. They would say that but for the court order, it would be an improper application or interpretation of the Study Act. Right. And they've actually said that. That's correct, Your Honor. Okay. And I think what's critical about this, too, the Forest Service has said the interim plan no more, it promulgated the interim plan to no more than comply with the district court's order. And at the same time, the Forest Service is trying to overturn that district court order. Where do they make that kind of specific statement? Where in the record do we find that? In the record in this case, there's no briefing in the record. How do we know that that's their position? If you look at the press release the Forest Service issued upon releasing the interim plan. That's part of the record? It is. I believe it's in our excerpts of record at the second volume at page 114. There, the Forest Service explicitly notes that the interim plan was first promulgated to comply with the district court's order. And second, that the district court. Well, that's a fact. I'm sorry? That's a fact. That's correct. That's not their defense. It's just, that's a statement of fact. That is right. In that press release, the agency argues that the district court's order left it with little other option than to further limit use areas, which is what the interim plan does. So in appealing that district court order this morning, the Forest Service is trying to get out from under the order that obligated it to promulgate the interim plan. The applicant conservation groups, in contrast, seek to ensure that the interim plan's protections or protections like those contained in the interim plan are maintained over the long term. So these are very different objectives, and they stem from an interpretive divide over the meaning of the Montana Wilderness Study Act. I think it's important to note, too, that this case does not rise or fall based on the application of a presumption of adequate representation. Even if this court were to find that adequate representation should be presumed, which the court should not do, it's more than rebutted. That presumption would be more than rebutted by the circumstances that prompted the applicant groups to seek to intervene in this case. In asserting that there is, quote, simply no evidence the Forest Service cannot or will not adequately defend the interim order, Citizens for Balanced Uses simply disregarded these circumstances and the governing law in this circuit. Counsel Judge Gould, if I could interject a practical question for you. Let's assume that, I know you don't want us to assume this, but assume that we affirm here that you're not allowed to intervene, but then assume that Citizens thereafter wins the case in the district court. If the government then, in that circumstance, didn't want to appeal, you wouldn't be in the case to appeal at that point. Could you effectively intervene after a judgment to seek to intervene in order to appeal? I believe, yes, we could seek intervention at that point, Your Honor. But the important point here, for purposes of resolving the present appeal, is that this court has not allowed the prospect of intervention later in a case to exclude a party from intervening at the opening stages of a proceeding. I think the Court's opinion in Sagebrush Rebellion makes this point very well, saying that if a party may participate in an appeal, it's essential that the party be able to participate in district court proceedings and thereby assist in developing the record for appeal. It's also true that this Court has again and again reiterated that the question in resolving an application for intervention is a speculative one. Under the Supreme Court's opinion in Turbevich, the question is whether the applicant's interests may be inadequately represented. It's clear at this point where the applicant conservation groups and the Forest Service actually stand in opposition to each other on the question of management of the study area that the Forest Service's representation is actually inadequate. So there is sufficient basis in front of the Court at this time to reverse the district court's order. In order to preserve our arguments in any later appeal, we ask that the Court do that now. Go ahead. Just a piece of information. You said there's no briefing in this case. What's the status of this case in the district court? There is briefing in the case. It's not in the record on appeal. The cross motions for summary judgment have now been fully briefed. Oral argument has not been scheduled, so an order from this Court granting the applicant group's intervention could allow us to participate in argument in front of the Court. There was one reference, I thought, to where you filed amicus briefs in the district court. We did file an amicus brief to preserve our arguments. On the merits. On the merits, yes. And that's part of this briefing you just referred to? That is correct. That's correct. And again, of course, the amicus briefs. Did you make points different from the Federal Government? We did, Your Honor. And I think what's interesting about this case, in the Southwest Center for Biological Diversity opinion, which Judge Gould authored, the Court explicitly noted that there is no obligation on the part of an applicant for intervention to show that they will, in fact, make different arguments than the government here based on the government's pending appeal. In the McAllister case, it has already been demonstrated that the applicants for intervention and the government will advance different arguments in support of the interim plan. And on that basis alone, the standard for intervention has been exceeded here. So just to return to the issue. Why don't you just save that time for rebuttal? Okay. I think we have the point. Thank you, Your Honor. Good morning, Your Honors. Good morning. May it please the Court. Kyle Nelson of the law firm Browning-Kalizak, Berry & Hoban in Bozeman, Montana, on behalf of the Appalachian Citizens for Balance Use. Based on the record before this Court, this intervention case is best left to the sound discretion of the trial judge to either grant or deny permissive intervention. Well, we review the denial of right to intervene, de novo, correct? That's correct, Your Honor. That's correct. But in this case, the applicants here have not demonstrated they are entitled to intervene. So on these facts, and because they are not entitled to intervene, this case is best left to the sound discretion of the trial judge to either grant or deny permissive intervention. Yeah. Well, I would suggest that you focus first on intervention of right. Yes, Your Honor. Where I think Judge Pius says we have a de novo standard. That sounds right to me. So really the question, I think the issue that we're grappling with is, are the interests of the appellant environmental groups, you know, are they adequately represented by the government? Or stated another way, do they have a good argument that it may be that their interests aren't adequately represented? Thank you, Your Honor. I think that the applicants' interests here are adequately represented. It is our position that the interests here are the same. Both the applicants and the Forest Service intend to defend the validity of the interim order and the interim management strategy for the Highlight Porcupine Area. While the Forest Service may believe that a less restrictive plan or motorized use scheme may also maintain wilderness character, there is no evidence on this record that the Forest Service does not believe that the interim restrictions do not maintain wilderness character. Well, what do we do with the argument, if you would address it then? Counsel is arguing that the Forest Service is defending on the basis of it being directed to implement the interim plan by the district court at the same time it's trying to undo that order in the McAllister case. Yes, Your Honor. And the Forest Service press release that the counsel referred to also states that the interim restrictions also maintain wilderness character. But it is our position that the applicants overstate the importance of the Forest Service appeal in the McAllister case because, first of all, the specific snowmobile restrictions at issue in the interim order were not mandated by the McAllister court. The McAllister court ordered compliance with the Montana Wilderness Study Act. The McAllister court offered zero guidance on how to accomplish that task. So the restrictions at issue in this case reflect the Forest Service's post-McAllister determination as to what configuration of motorized use accomplishes maintaining wilderness character. It struck me as a bit odd that, you know, they had litigated McAllister. Yes, Your Honor. And prevailed. And prevailed in McAllister, right? If the Forest Service had prevailed. No, no. I mean, the plaintiffs. Yes, they had, Your Honor. They litigated in McAllister. They prevailed. They won. They got a judgment in their favor. An interim order was put into effect. A lawsuit is filed to challenge that interim order. And then they can't intervene. They can't be part of this case that challenges that interim order. I found that very odd. It doesn't seem to be consistent with our case law, Idaho Farm Bureau Federation v. Babbitt and Fresno County v. Andrus. Well, I think the facts of the Andrus case and the Idaho Farm Bureau case can be distinguished from this case. In both of those cases, the Court found sufficient reason to doubt adequate representation because the prior litigants in both those two cases forced specific agency conduct, which are not present here. In the Andrus case, the prior litigation forced the Bureau of Reclamation to promulgate specific rules regarding the sale of excess land involving federally subsidized water. In the Idaho Farm Bureau case, the prior litigation forced the agency, through a settlement process, to list the endangered spring snail as an endangered species. The reasons for doubt in those two cases are not present here, which is the reluctance to undergo specific conduct. Well, here they're appealing the underlying order to this Court. They're saying that, you know, that the underlying order should be overturned. It's invalid. It's unlawful. That's correct, Your Honor. And these folks would like to preserve everything. They'd like to preserve what they obtained. They would. And the interim order is an offshoot of that. It is an offshoot of that, but it's not the only option the Forest Service had in the interim. And it's likely that ---- Well, nonetheless, I gather from what counsel just said that part of the interim order is somewhat beneficial from their perspective. That is true. And the Citizens for Balanced Use does not dispute the applicants' interests in the interim order restrictions. It's our position, though, that the ultimate objective of both the Forest Service and the applicants in this case is to uphold the validity of this interim order. And both parties maintain that the restrictions found in the interim order do, in fact, maintain validity. They have different arguments that they'd like to advance as to why it should be maintained. Yes. But I ---- They have a different legal position. Pardon me, Your Honor. They have a different legal position. The way that the Citizens for Balanced Use views the two legal positions is that there's no meaningful difference there. The applicants will intend to argue that the restrictions in the interim order are essential under the Montana Wilderness Study Act. It's the Forest Service's position that the restrictions under the interim order comply with the McAllister's which, in fact, comply with the Montana Wilderness Study Act. Those are slight differences, and there's no meaningful difference between those two positions. Counsel, if I could interject just to have you address a question. I also thought, as Judge Pius suggested, that the Fresno case suggested that there might be a right to intervene here. What I'd like to know is this. I do understand the general precedent on intervention under 24A, but I want to know in the environmental context. Am I wrong in thinking that in most big environmental cases, courts have freely let both environmental groups and development groups or recreational groups intervene as a matter of right so that all the interests, whether they be for environment or for development or for recreation, are brought out to help the court and derivatively help the public? Am I wrong in my impression? And if I'm wrong, what's your best case where, in an environmental law setting, intervention of right has been denied to a group like this? Just tell me. Give me the names of the cases. Your Honor, I can't think of a case directly on point regarding the environmental context where this Court has affirmed a denial of intervention as of right. But this Court in the Preet and Perry cases have held that where the parties have the same ultimate objective, the presumption of adequacy of rights. I understand that, but, like, why is this case different from all other environmental cases? Thank you, Your Honor. In the Anderson-Idaho Farm Bureau case, the Court did not discuss the issue of ultimate objective or whether the presumption had been overcome. Those cases, the line of cases that started discussing the ultimate objective came, I believe, in the Glickman case, which was following the Idaho Farm Bureau case. And so I think that the facts here now can be distinguished from the Anderson-Idaho Farm Bureau case because the Court simply didn't focus its analysis on. And that's certainly true. But, you know, this ultimate objective language, it's just language in a decision. And the question I have is, is it sensible to apply that in an environmental context? Isn't there an overriding public interest in a case like this that favors letting, whether it be environmentalists or recreation use groups or development groups, just lets them intervene and get all the arguments out? Well, I think, Your Honor, when there's an issue of whether or not the existing parties will adequately represent the proposed interveners, and it's determined by the trial court that they do, and if the right to intervene has not been justified, the question is properly put before the trial court then to make that decision or determination under 24B, permissive intervention. All right, so let's assume that they're not allowed to intervene. I think the same question I asked earlier. If they're not allowed to intervene and then your client wins the case, does anything require the government to appeal? The answer is probably no, they don't have to, right? That's correct, Your Honor. Okay, so then if environmental groups want to intervene post-judgment in order to appeal, they sort of have to play catch-up, right? To some degree, yes, they would have to play. So why does that make sense to do that or to have that risk when you can let them intervene and the trial court can certainly exercise discretion to limit examinations or limit witnesses or keep the trial managed so it doesn't take any appreciably longer time? Why wouldn't that be a more sensible system? I think in certain situations that may be the more sensible solution. But in this case, given the unique nature of the interim strategy, it is a temporary strategy. The trial court found that the applicant's interests will be adequately represented by the Forest Service here and that there will be no meaningful difference between their two positions. And because of that, the parties will find or rather there will be a, I guess, repetitive nature, at least as far as the trial judge is concerned, there may be a repetitive nature of briefing. Was that true at the summary judgment hearing, the briefing, the amicus briefs essentially just paraphrased the? No, that is not true. The applicant's amicus brief was, in fact, did advance different arguments than the Forest Service did. So I suppose if the shoe were on the other foot, you might be arguing the other side? It is possible, Your Honor. Yes. Recreational groups would probably like to represent the amicus, I suspect. Yes, Your Honor. Yes. Okay. Thank you. Thank you, Your Honor. Thank you. If I could just offer a few quick points in rebuttal here. First, CBU has asserted again that everyone, the applicants and the Forest Service, have the same ultimate objective because they seek to uphold the plan. That, of course, is not the standard. Under Judge Gould's opinion in Southwest Center for Biological Diversity and other cases, the court is focused on the question as to whether applicants will make different arguments, are likely to make different arguments, than a present party. And as has been demonstrated this morning, applicants will inevitably and have offered different arguments than the Forest Service in this case. Second, with respect to Idaho Farm Bureau, counsel suggested that that case actually presented stronger facts for intervention than are facts here. That has it backwards. In Idaho Farm Bureau, the underlying litigation brought by applicants had merely compelled a deadline for the agency action. It did not compel the agency to, in fact, list the species. Here, the underlying lawsuit compelled the Forest Service to promulgate a plan with protections the Forest Service itself did not want to adopt. The district court determined that the prior plan was inadequate. The Forest Service came forward in response to that with a stronger plan. So the substance of the interim plan has been compelled by the applicant's litigation. And accordingly, Idaho Farm Bureau is a weaker case on its facts and supports our intervention here. Finally, Judge Gould is right in noting that this court has consistently allowed environmental groups to intervene on the side of federal defendants in environmental cases. The Ninth Circuit recently said that exact thing in the Wilderness Society, an en banc case. CBU, in arguing for a different rule here, ultimately disregards the circumstances of this case and disregards the governing law of this circuit. And there is simply no reason to hold the applicant conservation groups from defending a plan their litigation prompted. Unless the Court has further questions, I would accordingly ask that you reverse the order of the district court and allow the applicant groups to defend the interim plan. Okay. Thank you, counsel. We appreciate the arguments. And the case is submitted. We will stand in adjournment. Thank you, counsel. We will stand in adjournment.
judges: Fisher, Gould, Paez